# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| JEFFERY HENRY,<br>    Petitioner, | Case No. 1:13-cv-81 |
| vs. | Spiegel, J.<br>Bowman, M.J. |
| WARDEN, CHILLICOTHE<br>CORRECTIONAL INSTITUTION,<br>    Respondent. | **REPORT AND<br>RECOMMENDATION** |

Petitioner, an inmate in state custody at the Chillicothe Correctional Institution, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition, respondent's return of writ, and petitioner's reply. (Docs. 9, 13, 14).

## I. FACTUAL BACKGROUND

On appeal to the Ohio Supreme Court, counsel for petitioner set forth the following summary of the facts leading to petitioner's conviction and sentence:

> On February 11, 2010, twenty-seven year-old Natasha Davis contacted Jeffery Henry wanting to earn some money to help pay for a trip to Texas. Natasha Davis is the niece of Henry's wife. (T.p. 95-98) Henry, who owned a mortgage business in Springdale, agreed to let Davis earn some money performing minor clerical work at his office. (T.p. 91)
>
> Around 10:00 AM on February 12, 2010, Davis arrived at Henry's office to begin work. (T.p. 99-101) Henry's business space was composed of a waiting room area, a storage room, and two individual separate offices. Henry worked in the back office while Davis worked in the front office closest to the exit door. Henry's office space was situated in an expansive three-story office building which contained anywhere from 80 to 100 other offices. There were 15 to 20 separate businesses located off the hallway just on Henry's floor alone. (T.p. 113-114)
>
> In his back office, Henry briefly instructed Davis on how to look up telephone numbers on his laptop computer using his LexisNexis program. After about five to ten minutes of instruction, Davis went to the front office where she began her work. (T.p. 102) Later in the day, Henry went into the front office where Davis was working. Henry admittedly initiated intimate contact with Davis. Henry pushed up her bra and then fondled and sucked on her breasts. (T.p. 104-105)

Davis testified that she said "no" and tried to push him off. (T.p. 12) Henry testified that Davis never objected; that she never said "no," that she never tried to push him away; and that she never indicated that the sexual contact was anything other than consensual. (T.p. 104-105)

Henry was interrupted by a telephone call and had to return to his back office for about ten minutes. Davis remained in the front office where she continued to work in Henry's absence. Davis did not leave the office or call anyone for help. (T.p. 106)

When Henry returned to the front office he continued his sexual contact with Davis. Henry asked Davis to stand up, which she did. Henry then unfastened Davis' pants, pulled them down, and asked her to sit back down, which she did. Henry then removed one of her pant legs, kneeled down in front of her, and performed oral sex on her. (T.p. 109-110) Henry never removed any of his own clothing. Davis claimed that she protested and tried to push Henry away. (T.p. 16) Henry indicated that all contact was consensual. After anywhere from three to five minutes, Henry stopped and returned to his back office. Davis remained in the front office where she continued working for about another hour. (T.p. 110-111)

Around noontime, Davis brought her completed paperwork to Henry's office. Henry asked Davis if she was able to work tomorrow, and she indicated that she was. Davis then left the office for the day. (T.p. 112-113)

Later that same day, Henry sent Davis a telephone text message asking her if she had enjoyed work. Davis responded that work was fine but that she did not enjoy the touching. (T.p. 114) Henry apologized if his actions had offended her and welcomed her to return to work the following day and indicated that there would be no more touching. (T.p. 114-115)

Around 5:00 PM, Henry received a call from Davis' cell phone. The caller was Davis' boyfriend, Mr. Reliford. Reliford demanded that they be paid $5,000. If not, they would tell Henry's wife about his actions with Davis. (T.p. 116) Henry indicated that he did not have $5,000 and that he would need some additional time to raise the money. The caller indicated that Davis would not be returning to work the next day, and that Henry should not contact her until the next Friday. (T.p. 115-116)

The following Friday came-and-went with no word from Davis or her boyfriend. (T.p. 117) On March 3, 2010, Henry sent a text message to Davis and asked if there was anything he could do to fix the matter. Shortly after sending the text, Henry received a reply text which indicated that he had been given the opportunity to do so, but that it was too late now. (T.p. 117-119) Henry replied that he had the money they wanted. A return text asked "where and when?" Henry replied that he only had $1,500 and it would take a few weeks to get the

balance. Henry heard nothing further form Davis or her boyfriend. But soon thereafter he was contacted by the police who were investigating an allegation of rape made by Davis. (T.p. 119)

(Doc. 13, Ex. 8, pp. 1–3).

## II. PROCEDURAL HISTORY

### State Trial Proceedings

On March 18, 2010, the Hamilton County, Ohio grand jury returned a three-count indictment charging petitioner with two counts of rape and one count of gross sexual imposition. (Doc. 13, Ex. 1). Petitioner, through counsel, entered a plea of not guilty to all counts charged in the indictment. (*See* Doc. 13, Ex. 2).

Following a bench trial, petitioner was found guilty of one count of rape and not guilty of gross sexual imposition and the remaining rape count. (Doc. 13, Ex. 3, 4). Petitioner filed a motion for a new trial prior to sentencing, which was denied by the trial court. (Doc. 13, Ex. 5; Transcript pp. 160–61). On October 25, 2010, petitioner was sentenced to four years of incarceration. (Doc. 13, Ex. 6).

### Direct Appeal

Petitioner, through counsel, filed a timely notice of appeal to the Ohio Court of Appeals. (Doc. 13, Ex. 7). Petitioner raised the following two assignments of error in his appellate brief:

FIRST ASSIGNMENT OF ERROR:
THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY FINDING HIM GUILTY OF RAPE WHEN THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT AS A MATTER OF LAW

Issue Presented for Review and Argument:
Whether the evidence presented at trial was insufficient to support a conviction for Rape in violation of R.C. 2907.02(A)(2)

> SECOND ASSIGNMENT OF ERROR:
> THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT AS HIS CONVICTION FOR RAPE IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL
>
> Issue Presented for Review and Argument:
> Whether Defendant-Appellant's conviction for Rape is contrary to the manifest weight of the evidence presented at trial

(Doc. 13, Ex. 8). On November 23, 2011, the Ohio Court of Appeals affirmed the judgment of the trial court. (Doc. 13, Ex. 10).

### Ohio Supreme Court

Petitioner, through counsel, filed a timely appeal to the Ohio Supreme Court. (Doc. 13, Ex. 11). In his memorandum in support of jurisdiction, petitioner again argued that the evidence presented at trial in support of his Rape conviction was insufficient as a matter of law and that his conviction was contrary to the manifest weight of the evidence. (Doc. 13, Ex. 12). On March 7, 2012, the Ohio Supreme Court denied petitioner leave to appeal and dismissed the appeal "as not involving any substantial constitutional question." (Doc. 13, Ex. 14).

### Motion for Judicial Release

On January 22, 2013, petitioner, through counsel, filed a motion for judicial release in the Hamilton County, Ohio Court of Common Pleas. (Doc. 13, Ex. 15). The court denied petitioner judicial release on January 28, 2013. (Doc. 13, Ex. 16).

### Federal Habeas Corpus

Petitioner filed the instant federal habeas corpus action on February 4, 2013. (Doc. 9). Petitioner raises two grounds for relief in the petition:

> **GROUND ONE**: The Ohio State Courts denied Petitioner Due Process of Law in violation of the Fifth and Fourteenth Amendments by finding him guilty and affirming the conviction when the verdict was based upon clearly insufficient evidence.

4

> Supporting Facts: Mr. Henry submits that a fair review of the evidence presented clearly reveals that his criminal conviction was not supported by sufficient evidence and must be vacated.
>
> **GROUND TWO**: The Ohio State Courts erred to the prejudice of Petitioner as his conviction for Rape is contrary to the manifest weight of the evidence.
>
> Supporting Facts: The lower courts did not consider the entire record before finding that there was enough proof to support the conviction. There was no credible evidence. The verdicts were logically inconsistent and cannot be reconciled. The lower courts lost their way and created a manifest miscarriage of justice.

(Doc. 9).

Respondent has filed a return of writ in opposition to the petition. (Doc. 13). Respondent contends that petitioner's grounds are not cognizable or without merit.

## III. THE PETITION SHOULD BE DENIED

In this federal habeas case, the applicable standard of review governing the adjudication of constitutional issues raised by petitioner to the state courts is set forth in 28 U.S.C. § 2254(d). Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v.*

*Taylor,* 529 U.S. 362, 412–13 (2000)), *cert. denied*, 132 S.Ct. 1743 (2012). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599–600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600. As the Sixth Circuit explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* __ U.S. __, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court). It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable*. . . . This is a "substantially higher threshold.". . . To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original). The Supreme Court recently extended its ruling in *Harrington* to hold that when a state court rules against a defendant in an opinion that "addresses some issues but does not expressly address the federal claim in question," the federal habeas court must presume, subject to rebuttal, that the federal claim was "adjudicated on the merits" and thus subject to the "restrictive standard of review" set out in § 2254(d). *See Johnson v. Williams*, __ U.S. __, 133 S.Ct. 1088, 1091 (2013).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves

6

authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 131 S.Ct. at 786. In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher*, __ U.S. __, 132 S.Ct. 38, 44–45 (2011); *cf. Otte,* 654 F.3d at 600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision"). In *Greene*, 132 U.S. at 44, the Court explained:

> [W]e held last term in *Cullen v. Pinholster*, 563 U.S. __, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits. We said that the provision's "backward-looking language requires an examination of the state-court decision at the time it was made." *Id.*, at __, 131 S.Ct. at 1398. The reasoning of *Cullen* determines the result here. As we explained, § 2254(d)(1) requires federal courts to "focu[s] on what a state court knew and did," and to measure state-court decisions *as of 'the time the state court renders its decision.'" Id.*, at __, 131 S.Ct. at 1399 (quoting *Lockyer v. Andrade,* 538 U.S. [at] 71-72 . . .; emphasis added).

Decisions by lower courts are relevant "to the extent [they] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010), *cert. denied,* 132 S.Ct. 127 (2011)). The writ may

issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

In this case, the Ohio Court of Appeals was the only state court to issue a reasoned decision addressing the merits of petitioner's assignments of error challenging the sufficiency and manifest weight of the evidence. The court rejected both claims, reasoning in pertinent part as follows:

> Defendant-appellant Jeffery Henry appeals the judgment of the Hamilton County Court of Common Pleas convicting him on one count of rape, in violation of R.C. 2907.02(A)(2).
>
> In two assignments of error, Henry contends that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence.
>
> We overrule these assignments of error. First, upon the evidence adduced at trial, reasonable minds could have reached different conclusions as to whether each element of the crime had been proved beyond a reasonable doubt. See *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781.
>
> And second, we find nothing in the record of the proceedings below to suggest that the trial court, in resolving the conflicts in evidence adduced on the offense, lost its way or created such a manifest miscarriage of justice as to warrant the reversal of Henry's conviction. See *State v. Tompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. We note that the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. Further, the separate counts of an indictment are not interdependent; "an inconsistency in a verdict does not arise out of inconsistent response to different counts, but only arises out of inconsistent responses to the same count." *State v. Brown* (1984) 12 Ohio St.3d 147, 465 N.E.2d 889, syllabus (approving and following *Browning v. State* [1929], 120 Ohio St. 62, 165 N.E.2d 566; *State v. Adams* [1978], 53 Ohio St.2d 233, 374 N.E.2d 137, paragraph two of the syllabus, vacated on other grounds [1978], 439 U.S. 811, 99 S.Ct. 69), cited in *State v. Lovejoy*, 79 Ohio St.3d 440, 1997-Ohio-371, 683 N.E.2d 1112, paragraph one of the syllabus.

> Therefore, we affirm the trial court's judgment.

(Doc. 13, Ex. 10).

After review of the record in this case, the undersigned finds that petitioner is not entitled to habeas relief. As an initial matter, petitioner is not entitled to habeas relief on the basis of his manifest weight of the evidence claim in Ground Two of the petition. A "manifest weight of evidence" claim, which is based on a state law concept that is "both quantitatively and qualitatively different" from a constitutional due process sufficiency of evidence standard, *see Tibbs v. Florida,* 457 U.S. 31, 41–47 (1982), and *State v. Thompkins*, 678 N.E.2d 541, 546 (1997), *superseded by state constitutional amendment on other grounds in State v. Smith*, 684 N.E.2d 668 (1997), raises an issue of state law only that is not cognizable in a federal habeas corpus proceeding such as this. *See* 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984).

The Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those who have been convicted without proof sufficient to allow a rational trier of fact to find guilt beyond a reasonable doubt. *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir. 1983). In the context of a claim alleging a violation of due process, "sufficiency of the evidence" refers to the due process requirement that there be enough evidence introduced in favor of the prosecution for a rational trier of fact to find each element of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

However, under Ohio law, a claim that a verdict was against the manifest weight of the evidence—as opposed to one based upon insufficient evidence—requires the appellate court to act as a "thirteenth juror" and to review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether "the jury clearly lost its way and created such a

9

manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 485 N.E.2d 717, 720 (1st Dist. Ohio 1983); *cf. Tibbs v. Florida*, 457 U.S. 31 (1982). "Since a federal habeas court does not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review, petitioner's claim that his convictions were against the manifest weight of the evidence cannot be considered by this Court." *Mason v. Brunsman*, No. 1:07-cv-1020, 2009 WL 2169035, at *29 (July 16, 2009 S.D. Ohio ) (Spiegel, J.; Black, M.J.). Accordingly, petitioner is not entitled to habeas relief based on his manifest weight of the evidence claim raised in Ground Two.

With regard to Ground One, the clearly-established standard of review for evaluating the merits of constitutional claims challenging the sufficiency of the evidence was established by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979). As the Supreme Court held in *Jackson*, because the Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to constitute the charged offense, *In Re Winship,* 397 U.S. 358, 363–64 (1970), "the relevant question" in assessing the sufficiency of the evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319 (emphasis in original).

Under the *Jackson* standard, the State is not required to rule out every hypothesis except that of guilt beyond a reasonable doubt. *Id.* at 326. Rather, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*; *see also Walker v. Engle,* 703 F.2d 959, 969–70 (6th Cir. 1983). It is the responsibility of the trier of fact to resolve conflicts in

testimony, to weigh the evidence and to draw reasonable inferences from the evidence. *Jackson,* 443 U.S. at 319. Consequently, the reviewing court is not permitted to reweigh the evidence, reevaluate the credibility of witnesses, make its own subjective determination of guilt or innocence, or otherwise substitute its opinion for that of the jury. *See id.* at 318–19 & n.13; *see also United States v. Fisher,* 648 F.3d 442, 450 (6th Cir. 2011) (citing *Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009)); *York v. Tate,* 858 F.2d 322, 329 (6th Cir. 1988) (per curiam).

"Circumstantial evidence alone is sufficient to support a conviction." *Newman v. Metrish,* 543 F.3d 793, 796 (6th Cir. 2008) (quoting *Johnson v. Coyle,* 200 F.3d 987, 992 (6th Cir. 2000)); *see also Fisher*, 648 F.3d at 450. Due process is satisfied as long as such evidence is enough for a rational trier of fact to make a permissible *inference* of guilt, as opposed to a reasonable *speculation* that the petitioner is guilty of the charged crime. *Newman,* 543 F.3d at 796–97 (and Sixth Circuit cases cited therein).

Moreover, federal habeas review of a claim challenging the sufficiency of the evidence is even further limited. As the Sixth Circuit explained in *Brown*, 567 F.3d at 205, the federal habeas court is "bound by two layers of deference to groups who might view facts differently than [the habeas court] would." The federal habeas court must defer not only to the trier of fact's findings as required by *Jackson*, but under 28 U.S.C. § 2254(d), must also "defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Id.* (emphasis in original); *see also Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011), *cert. denied*, 132 S.Ct. 1927 (2012); *Anderson v. Trombley*, 451 F. App'x 469, 474-75 (6th Cir. 2011), *cert. denied*, 132 S.Ct. 1152 (2012). Therefore, as the Sixth Circuit went on to emphasize in *Brown*:

> [W]e cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt. We cannot even inquire whether *any* rational trier of fact would conclude that petitioner . . . is guilty of the offenses for which he was charged. Instead, we must determine

whether the Ohio Court of Appeals itself was unreasonable in *its* conclusion that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial.

*Brown,* 567 F.3d at 205 (emphasis in original).

Applying the double-layer deferential standard to the case-at-hand, the undersigned is convinced that the Ohio Court of Appeals' sufficiency determination is neither contrary to nor an unreasonable application of *Jackson*. In order to carry its burden of proof on petitioner's rape conviction, the prosecution was required to prove that petitioner engaged in sexual conduct with another by purposefully compelling the other person to submit by force or threat of force. *See* Ohio Rev. Code § 2907.02(A)(2). As he did in the state courts, petitioner here contends that there was insufficient evidence to demonstrate that any force was used. However, under Ohio Rev. Code § 2901.01(A)(1), force is defined as "any violence, compulsion or constraint physically exerted by any means upon or against a person or thing" and, under Ohio law, "[f]orce need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established." *State v. Eskridge*, 526 N.E.2d 304, 306 (Ohio 1988).

In this case, the victim testified that she told petitioner "no" in response to his advances and tried to push petitioner away on several occasions throughout the incident. (Doc. 13, Transcript pp. 12, 13, 17, 18). The victim further testified that petitioner, who is 6' 4'' and 225 pounds (*id.* at 121), told her to "relax" and that she did not try to fight him off because of his size and because she was scared for her life. (*Id.* at 13, 14). She indicated that she "felt as though she was being over powered," testifying that "he had took my hand, kind of pulled me up and proceeded to put his hand down my pants and put his finger up my vagina. And at that time I'm trying to get his hand out of there. He's taking his other hand and unbuttoning - - unzipping my

12

pants." (*Id.* at 16, 17). On cross-examination, the victim further testified that she tried to push petitioner's arm and head away from her (*id.* at 38, 40, 44, 47), but that petitioner would not permit her to sit back down or remove her hand from his arm (*id.* at 44–45), stating that "when I was trying to push his hand off of me he kept forcefully - - it was force. He was not moving his hand at all." (*Id.* at 41–42).

When viewing all of the evidence in the light most favorable to the prosecution, this Court concludes that the evidence was constitutionally sufficient to sustain petitioner's conviction. Although petitioner offers his own interpretation of the facts and contends that "from the facts, any reasonable person would see that it was consensual," it is not the province of this court to reweigh the evidence on habeas review. *See Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (noting that a habeas court "does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court"). The Ohio Court of Appeals' adjudication of petitioner's sufficiency-of-evidence claims involved a reasonable application of the *Jackson* standard and was based on a reasonable determination of the facts in light of the evidence presented at trial.[1]

Accordingly, in sum, the undersigned concludes that petitioner is not entitled to habeas relief. Having found that Ground One of the petition is without merit and Ground Two is not cognizable, the petition should be **DENIED** with prejudice.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 9) be **DENIED** with prejudice.

---

[1] To the extent that petitioner maintains that he is entitled to habeas relief based on inconsistent verdicts, his claim is without merit. As the Supreme Court has noted, "[c]onsistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment." *Dunn v. United States*, 284 U.S. 390, 393 (1932). *See also Harris v. Rivera*, 454 U.S. 339, 345 (1981) ("Inconsistency in a verdict is not a sufficient reason for setting it aside.").

2. A certificate of appealability should not issue with respect to the claims alleged in the petition, which have been addressed on the merits herein, because petitioner has not stated a "viable claim of the denial of a constitutional right," nor are the issues presented "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)). *See also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

      *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| JEFFERY HENRY,<br>Petitioner,<br><br>vs.<br><br>WARDEN, CHILLICOTHE<br>CORRECTIONAL INSTITUTION,<br>Respondent. | Case No. 1:13-cv-81<br><br>Spiegel, J.<br>Bowman, M.J. |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).